IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

ELVIN LeBRON,

                    Petitioner,

    v.                                 Civil Action No.
                                 9:05-CV-0534 (LEK/DEP)

DALE ARTUS,

                    Respondent.

_____

APPEARANCES:             OF COUNSEL:

FOR PETITIONER:

ELVIN LeBRON, *pro se*

FOR RESPONDENT:

HON. ELIOT SPITZER            LUKE MARTLAND, ESQ.
Office of the Attorney General     Assistant Attorney General
New York Office
120 Broadway
New York, NY 10271

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

      Petitioner Elvin LeBron, a New York State prison inmate as a result of

a 1994 conviction for manslaughter, robbery, and weapons possession,

has commenced this proceeding seeking habeas review of a disciplinary

determination which resulted, *inter alia*, in his loss of two years of good time credit.  In his petition, plaintiff alleges deprivation of procedural due process, arguing that he was denied access to witnesses and documents necessary to support his defense, the hearing officer presiding over the disciplinary proceeding was biased, and the resulting punishment was excessive.  Petitioner also challenges the assistance provided to him in connection with the hearing as well as the sufficiency of evidence presented to support the hearing officer's finding of guilt.

Having reviewed LeBron's petition, which is opposed by the respondent, in light of the deferential standard owed to the findings of the state courts with respect to each of these claims, I recommend that the petition be denied.

I.     BACKGROUND

Petitioner is a New York State prison inmate entrusted to the custody of the New York State Department of Correctional Services ("DOCS").  On July 26, 2002, while confined within the Cayuga Correctional Facility, having recently been transferred into that prison, petitioner and his cellmate, inmate Morales, were approached in their cell by a DOCS corrections counselor for initial interviews.  While his co-inmate was being

2

interviewed, petitioner jumped from the top bunk and, standing behind his cellmate, reached from behind and made a downward slashing motion.  As a result of the incident, petitioner's cellmate suffered a fourteen inch laceration from his right eyebrow to his upper back.  When questioned by the corrections counselor who witnessed the incident, petitioner responded by stating "you saw, I cut him."  Article 78 Second Amended Answer Exh. K.  When pressed regarding why he had taken that action, petitioner responded "my bunking days are over."  *Id.*  Petitioner further stated that the incident was "nothing personal" but that he was not going to double bunk anymore.  *Id.*

As a result of the incident, the corrections counselor issued petitioner an inmate misbehavior report on July 26, 2002, alleging assault on an inmate (Rule 100.10), creation of a disturbance (Rule 104.13), possession of a weapon (Rule 113.10), engaging in violent conduct (Rule 104.11), interference with an employee (Rule 107.10) and refusal of a double cell assignment (Rule 109.15).[1]  Article 78 Second Amended Answer Exh. K.

A Tier III disciplinary hearing was commenced on August 2, 2002 to

---

[1]  The incident was also the subject of interdepartmental memoranda from various employees either involved in or responding to the incident, as well as an unusual incident report.  *See* Article 78 Second Amended Answer Exhs. M & N.

address the charges set forth in that misbehavior report, with Captain Seitz

presiding as the hearing officer.[2]  Article 78 Second Amended Answer Exh.

R.  At the outset of the hearing petitioner entered a plea of not guilty to

each of the charges alleged, and was advised of his rights and

responsibilities, stating that he understood them.  It was noted that

petitioner had requested assistance, and that the person designated to act

in that capacity had both met with the petitioner and made requests for

both witnesses and records.  Article 78 Second Amended Answer Exhs. L

and R at p. 2.  The focal point of the petitioner's defense in the case

surrounded the cause of Morales' injuries, the petitioner having

acknowledged that he was injured, although questioning the severity of

those injuries.  At one point during the proceeding petitioner suggested that

his cellmate had injured himself by brushing against a sharp object in the

wall, though he later admitted having had a fight with the victim and

indicated he had forgotten about his earlier testimony speculating that

---

[2]      The DOCS conducts three types of inmate disciplinary hearings.  Tier
I hearings address the least serious infractions, and can result in minor
punishments such as the loss of recreation privileges.  Tier II hearings involve more
serious infractions, and can result in penalties which include confinement for a
period of time in the Special Housing Unit ("SHU").  Tier III hearings concern the
most serious violations, and could result in unlimited SHU confinement and the loss
of "good time" credits.  *See Hynes v. Squillace*, 143 F.3d 653, 655 n.1 (2d Cir.),
*cert. denied*, 525 U.S. 907, 119 S. Ct. 246 (1998).

Morales had injured himself by brushing against the wall.  Article 78
Second Amended Answer Exh. R at pp. 15, 44-45.

The key witness testifying at the hearing was the corrections
counselor who witnessed the incident, petitioner's cellmate having refused
to testify and having executed a witness refusal form to that effect.  The
counselor, who was unavailable to appear in person due to her regular
prison duties, participated instead by speaker phone.  The corrections
counselor testified that at the time of the incident she observed that
petitioner "was holding something in his hands and it was obvious from his
act that he had cut [his fellow inmate]."  Article 78 Second Amended
Answer Exh. R at p. 30.  The corrections counselor also confirmed
petitioner's statements regarding the reasons for attacking his fellow
inmate, and attested to the disturbance which required her to call in other
officers to address the situation.

At the close of the proceedings hearing officer Seitz rendered a
written decision dated August 10, 2002, which was read into the record,
finding petitioner guilty of assault on an inmate, violent conduct, creating a
disturbance, refusing double-celling assignment and possession of a
weapon, but exonerating him of interference with an employee.  Article 78

5

Second Amended Answer Exh. S.  As a result of his findings the hearing

officer imposed a sanction of three years of disciplinary confinement in the

facility Special Housing Unit ("SHU"), with the corresponding loss of

privileges, together with the loss of three years of good time credits.  *Id.*

Those sanctions were subsequently reduced on administrative appeal by

decision rendered on September 25, 2002, adjusting the length of SHU

confinement and loss of privileges and good time credits downward to a

period of two years.  Article 78 Second Amended Answer Exh. V.

II.    PROCEDURAL HISTORY

    A.    State Court Proceedings

LeBron challenged the hearing officer's determination by the filing of

a petition in New York State Supreme Court, Albany County, under Article

78 of the N.Y. Civil Practice Law and Rules in late 2002.  Following transfer

of the petition to the New York State Supreme Court Appellate Division,

Third Department, that court issued a determination on April 29, 2004

confirming the disciplinary adjudication.[3]  *LeBron v. Goord*, 6 A.D.3d 997,

---

[3]    The Third Department's April 29, 2004 decision addressed claims growing out of two separate disciplinary proceedings.  The claims presented to that court in connection with a misbehavior report accusing LeBron of conspiring to organize a prison sit and protest demonstration are the subject of a petition filed with this court pursuant to 28 U.S.C. § 2254 on March 23, 2005.  *See LeBron v. Superintendent*, No. 9:05-CV-00365 (LEK/GHL).  No decision has yet been rendered by this court in connection with that proceeding.

775 N.Y.S.2d 434 (3d Dep't 2004).  In its determination the Third

Department rejected the arguments now raised by LeBron, based upon a

review of the record, concluding that 1) there was substantial evidence to

support the hearing officer's determination; 2) petitioner was provided with

adequate employee assistance as well as all witnesses and documents

necessary to present his defense; 3) the refusal of petitioner's cellmate to

testify was adequately explained by the hearing officer; 4) the misbehavior

report issued was sufficient to adequately apprise petitioner of the charges

against him; 5) there was no evidence of hearing officer bias; and 6)

petitioner did not receive an excessive penalty.  *Id.* at 998-99, 775

N.Y.S.2d at 435-36.  Petitioner's application for leave to appeal that

determination to the New York Court of Appeals was denied.

     B.    <u>Proceedings in this Court</u>

     Petitioner commenced this proceeding on May 2, 2005.  Dkt. No. 1.

Appropriately named in LeBron's petition as the respondent is Dale Artus,

the superintendent of the facility in which petitioner was confined at the

time of commencement.  *See id.*  In his petition, LeBron asserts five

grounds for the granting of habeas relief, arguing that 1) he was denied the

documents and witnesses necessary to present a proper defense; 2) he

was denied adequate assistance; 3) there was a lack of evidence to support the hearing officer's determination; 4) the hearing officer was biased; and 5) the sentence imposed was excessive.  *Id.*

On July 8, 2005 respondent Artus, represented by the office of the New York State Attorney General, submitted a response to LeBron's petition.[4]  Dkt. Nos. 6, 7.  Respondent's counsel has since provided the court with records associated with the disciplinary proceeding at issue as well as the earlier state court challenge of the resulting determination.  On October 11, 2005 petitioner filed a reply memorandum, or "traverse", responding to the arguments of counsel and asserting arguments in further support of his petition.  Dkt. No. 9.

This matter, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c); *see also* Fed. R. Civ. P. 72(b).

---

[4]      That response, which does not include an answer to the petition, has been considered by the court as a general denial of the allegations set forth in LeBron's petition, based upon the arguments asserted in respondent's memorandum of law.

8

III.    DISCUSSION

A.    Standard of Review

Enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), brought about significant new limitations on the power of a federal court to grant habeas relief to a state court prisoner under 28 U.S.C. § 2254.  Under the AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see also Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir. 2001) (quoting § 2254(e)(1)) (internal quotes omitted). Significantly, a federal court may not grant habeas relief to a state prisoner on a claim

> that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented

9

in the State court proceeding.

28 U.S.C. § 2254(d); *see also Thibodeau v. Portuondo*, __ F.3d __, No.

05-0149, 2007 WL 1374755, at *2 (2d Cir. May 11, 2007); *Noble v. Kelly*,

246 F.3d 93, 98 (2d Cir.), *cert. denied*, 534 U.S. 886, 122 S. Ct. 197

(2001); *Boyette*, 246 F.3d at 88.  When applying this test, the Second

Circuit has noted that

> [u]nder AEDPA, we ask three questions to
> determine whether a federal court may grant
> habeas relief: (1) Was the principle of Supreme
> Court case law relied upon in the habeas petition
> "clearly established" when the state court ruled?
> (2) If so, was the state court's decision "contrary to"
> that established Supreme Court precedent? (3) If
> not, did the state court's decision constitute an
> "unreasonable application" of that principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Williams v.*

*Taylor*, 529 U.S. 362, 412-13, 1120 S. Ct. 1495, 1523 (2000) and *Francis*

*S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000) (citing *Williams*)).

Because the AEDPA's restriction on federal habeas power was

premised in no small part upon the duty of state courts to uphold the

Constitution and faithfully apply federal laws, the AEDPA's exacting review

standards apply only to federal claims which have been actually

adjudicated on the merits in the state court.  *Washington v. Schriver*, 255

10

F.3d 45, 52-55 (2d Cir. 2001).  Specifically, as the Second Circuit explained in *Sellan v. Kuhlman*, "[f]or the purposes of AEDPA deference, a state court 'adjudicate[s]' a state prisoner's federal claim on the merits when it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment."  261 F.3d 303, 312 (2001); *see Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (citing *Sellan*), *cert. denied sub nom.*, *Jimenez v. Graham*, 127 S. Ct. 976 (2007).  Significantly, the Second Circuit further held that when a state court adjudicates a claim on the merits, "a federal habeas court must defer in the manner prescribed by § 28 U.S.C. 2254(d)(1) to the state court's decision on the federal claim – *even if the state court does not explicitly refer to either the federal claim or to relevant federal case law*."  *Sellan*, 261 F.3d at 312 (emphasis added).[5,6]

---

[5]    In the past, when wrestling with interpretation and application of the AEDPA's deference standard the Second Circuit had suggested, although leaving open the question, that deference under section 2254(d) is not mandated if a state court decides a case without citing to federal law or otherwise making reference to a federal constitutional claim in a manner adequate to justify deference under AEDPA, in which case pre-AEDPA standards would apply.  *Washington*, 255 F.3d at 52-55; *see also Noble*, 246 F.3d at 98.  That court recently clarified in *Sellan*, however, that the question of whether or not a state court makes specific reference to a constitutional principle is not controlling.

[6]    In his opinion in *Sellan*, Chief Judge Walker acknowledged that enlightenment in state court decisions as to the manner of disposition of federal claims presented would greatly enhance a federal court's ability, on petition for habeas review, to apply the AEDPA deference standard.  *Sellan*, 261 F.3d at 312.

When a state court's decision is found to be decided "on the merits", that decision is "contrary to" established Supreme Court precedent if it applies a rule that contradicts Supreme Court precedent, or decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 120 S. Ct. at 1519-20. Moreover, a federal court engaged in habeas review must also determine not whether the state court's determination was merely incorrect or erroneous, but instead whether it was "'objectively unreasonable.'" *Sellan*, 261 F.3d at 315 (quoting *Williams*, 529 U.S. at 409, 120 S. Ct. at 1521 (O'Connor, J.)). The Second Circuit has noted that this inquiry admits of "[s]ome increment of incorrectness beyond error", though "the increment need not be great[.]" *Francis S.*, 221 F.3d at 111.

B.    Merits of LeBron's Petition

In his petition, LeBron complains of good time credits which were forfeited by him as a result of the disciplinary proceedings in question. The loss of good time credits in New York has been recognized by the

_____

He noted, however, that a state court's failure to provide such useful guidance does not obviate a federal court's duty to make the analysis and pay appropriate deference if the federal claim was adjudicated on the merits, albeit tacitly so. *Id.*

12

courts as the deprivation of a liberty interest cognizable under the

Fourteenth Amendment to the United States Constitution.[7]  *See Ponte v.*

*Real*, 471 U.S. 491, 495, 105 S. Ct. 2192, 2195 (1985); *see also Wolff v.*

*McDonnell*, 418 U.S. 539, 558, 94 S. Ct. 2963, 2976 (1974); *see also*

*Hinebaugh v. Wiley*, 137 F. Supp. 2d 69, 76 (N.D.N.Y. 2001) (Kahn, J.)

(citing *Wolff*).  As such, the loss of good time credits is subject to the

procedural due process safeguards afforded under the Fourteenth

Amendment.  *Ponte*, 471 U.S. at 495, 105 S. Ct. at 2195.  In this regard, it

is well-established that a prisoner may challenge the loss of good time

credits resulting from a disciplinary proceeding only by filing a habeas

corpus petition.  *See, e.g., Edwards v. Balisok*, 520 U.S. 641, 646-48, 117

S. Ct. 1584, 1588 (1997) (noting that section 1983 claim does not lie

where prison disciplinary proceeding results in loss of good time credits);

*Preiser v. Rodriguez*, 411 U.S. 475, 500, 93 S. Ct. 1827, 1841 (1973)

(stating that habeas corpus is the sole remedy when a state prisoner

seeks "a speedier release . . . from imprisonment"); *Carmona v. United*

---

[7]     While petitioner's claims surrounding the loss of good time credits are redressable by habeas petition filed under 28 U.S.C. § 2254, the remaining sanctions, including disciplinary SHU confinement and loss of privileges are not, and instead are more appropriately addressed through a plenary civil rights action commenced under 42 U.S.C. § 1983.  *Peralta v. Vasquez*, 467 F.3d 98, 104-05 (2d Cir. 2006).

*States Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001) (finding that federal prisoner's challenge to prison disciplinary hearing resulting in loss of good time credits properly brought as a writ of habeas corpus under 28 U.S.C. § 2241); *Jackson v. Johnson*, 15 F. Supp. 2d 341, 347-50 (S.D.N.Y. 1998).

The constitutionally-mandated due process requirements associated with liberty interest deprivations such as those expressed by LeBron were articulated in *Wolff v. McDonnell*, and include 1) written notice of the charges; 2) the opportunity to appear at a disciplinary hearing and present witnesses and evidence, subject to legitimate safety and penological concerns; 3) a written statement by the hearing officer explaining his or her decision and the reasons for the action being taken; and 4) in some circumstances, the right to assistance in preparing a defense.  418 U.S. at 564-67, 94 S. Ct. at 2978-80; *Eng v. Coughlin*, 858 F.2d 889, 897-98 (2d Cir. 1988).  In the event these requirements are met, a hearing officer's determination will be upheld so long as it is supported by "some evidence."  *Superintendent v. Hill*, 472 U.S. 445, 455, 105 S. Ct. 2768, 2774 (1985).

Applying these principles, in its decision the Third Department held

that 1) the hearing officer's determination was supported by substantial evidence of petitioner's guilt; 2) petitioner received adequate employee assistance; 3) petitioner was provided with all witnesses and documents necessary to present a meaningful defense; 4) there was no evidence of hearing officer bias; and 5) the penalty imposed, as modified, was not excessive.  *LeBron*, 6 A.D.3d at 998-99, 775 N.Y.S.2d at 435-36.  These findings are entitled to deference under the AEDPA, and petitioner is therefore not entitled to habeas relief unless one or more of those findings is either contrary to or represents an unreasonable application of the aforementioned clearly established Supreme Court precedent.

      1.    <u>Denial of Evidence and Witnesses</u>

      In his petition, LeBron maintains that he was denied various evidence for use in his defense, including 1) cell search and sign-in/sign-out log books which could have shown who else was present in the vicinity at the time of the incident; 2) notes taken by the corrections counselor regarding the incident; 3) photographs taken of the cellmate's injuries; 4) video and audio tapes regarding the incident; and 5) a certified medical report regarding Morales' injuries.  Additionally, petitioner complains of the failure of officials to require the testimony of the injured cellmate, who

executed a form demonstrating his refusal to testify.

     a)    <u>Clearly Established Supreme Court Precedent</u>

As stated in *Wolff*, an inmate has the right to call witnesses and present evidence in his or her defense "when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals."  418 U.S. at 566, 94 S. Ct. at 2979.  A hearing officer, however, does not violate due process by excluding irrelevant or unnecessary testimony or evidence. *See Kingsley v. Bureau of Prisons,* 937 F.2d 26, 30 (2d Cir. 1991) (citations omitted); *see also*, *e.g.*, *Kalwasinski v. Morse*, 201 F.3d 103, 108-09 (2d Cir. 1999) (citations omitted) (indicating that testimony on the record that no one else was present at incident gave rational basis for excluding the plaintiff's witnesses as irrelevant and unnecessary).

Regarding an inmate's right to call witnesses, due process requires that the hearing officer explain why witnesses were not allowed to testify. *Ponte*, 471 U.S. at 497, 105 S. Ct. at 2196; *Fox v. Coughlin*, 893 F.2d 475, 478 (2d Cir. 1990) (citing *Ponte*); *Parris v. Coughlin*, No. 90-CV-414, 1993 WL 328199, at *5 (N.D.N.Y. Aug. 24, 1993) (Hurd, M.J.) (same).  These reasons may be provided at the disciplinary hearing itself, or by presenting testimony in the course of a later constitutional challenge.  *Ponte*, 471

U.S. at 497, 105 S. Ct. at 2196; *Parris*, 1993 WL 328199, at *6 (citing

*Ponte*).  The burden is not upon the inmate to prove the official's conduct

was arbitrary and capricious, but upon the official to prove the rationality of

his or her position.  *Fox*, 893 F.2d at 478 (citing *Ponte*); *Parris*, 1993 WL

328199, at *6 (citing *Kingsley*, 937 F.2d at 30-31); *see also Dumpson v.*

*Rourke*, No. 96 CV621, 1997 WL 610652, at *5 (N.D.N.Y. Sept. 26, 1997)

(Pooler, J.) (citing *Greene v. Coughlin*, No. 93 Civ. 2805, 1995 WL 60020,

at *14 (S.D.N.Y. Feb. 10, 1995) (hearing officer need not make

independent evaluation of the basis for refusal to testify)).

A hearing officer has no power to force an inmate to testify, and

when an inmate refuses, the hearing officer need not call that witness.

*Dumpson*,1997 WL 610652, at *5 (citing *Silva v. Casey*, 992 F.2d 20, 21-

22 (2d Cir. 1993)).  "Clearly, if a witness will not testify if called, it cannot

be a 'necessity' to call him."  *Silva*, 992 F.2d at 22; *see also Wolff*, 418

U.S. at 568-69, 94 S. Ct. at 2981 (recognizing discretion of prison officials

to decline to call as witnesses fellow inmates who do not wish to testify).

   b) <u>Contrary To, or Unreasonable Application Of, Clearly</u>
     <u>Established Supreme Court Precedent</u>

The hearing report reflects that petitioner was provided with copies

of the cell search and activity log books but was denied the counselor's

sign-in/sign-out log book after being unable to support his claim of relevance of that document to the pending charges.  *See* Article 78 Second Amended Answer Exh. R at pp. 2-4.  Since it appears uncontroverted that the only witnesses to the incident, which took place in the petitioner's cell, were his fellow inmate, who refused to testify or to press charges, and the corrections counselor, it appears unlikely that any records revealing other corrections personnel in the area would have yielded additional information relevant to the incident.  *See Kalwasinski*, 201 F.3d at 108-09.

Petitioner's request for the corrections counselor's notes of her interviews with the petitioner and inmate Morales was also refused by the hearing officer based on the unlikelihood of relevant information contained within those notes, particularly in view of the fact that the corrections counselor did testify and petitioner was provided with a copy of the interdepartmental memorandum sent by her which provided a full account of the incident.  *See* Article 78 Second Amended Answer Exh. R at pp. 27-37.  The denial of that request does not appear to have deprived the petitioner of relevant information critical to his defense of the disciplinary charges lodged against him.

18

Turning to evidence regarding the injury suffered by the petitioner's cellmate, as well as medical reports, it appears uncontroverted that petitioner was allowed to view photographs of the inmate's injuries, and was permitted to call a DOCS nurse working at the facility to describe those injuries.[8]  Article 78 Second Amended Answer Exh. R at pp. 6, 10-11, 19-21.

The record belies petitioner's claim that he was denied access to the videotapes of the incident, instead revealing that petitioner simply refused to review them in the presence of the hearing officer.  *See* Article 78 Second Amended Answer Exh. R at pp. 21-22.  The evidence does reflect that the cellmate who was injured was not called to testify, and that failure was based upon the inmate's refusal to appear.  *See id.* at p. 2.  That refusal and the failure of prison officials to compel that testimony was proper, particularly in light of the fact that both the petitioner and the corrections counselor who witnessed the entire incident were available and did testify regarding the assault.

In sum, the Appellate Division's finding that petitioner was provided

---

[8]      It does not appear under the applicable regulations that the cellmate was required to sustain actual injury in order to support a finding of guilt of assault. *See* N.Y. Comp. Codes R. & Regs. tit. 7, § 270.2(B)(1)(i) (Rule 100.10) (2007).

with adequate evidence and witnesses to present a meaningful defense was not contrary to or an unreasonable application of clearly established Supreme Court precedent.

### 2.   Inadequate Assistance

Petitioner claims that his signature was forged on the form addressing assistance, that he did not receive an assistant of his choice, and further that the assistant did not obtain necessary evidence to allow him to present a meaningful defense.

### a)   Clearly Established Supreme Court Precedent

Under *Wolff*, a prison inmate accused in a disciplinary proceeding is entitled to adequate assistance under certain circumstances, such as when the issues are unduly complex or the inmate is illiterate.  *See Wolff*, 418 U.S. at 570-71, 94 S. Ct. at 2981-82; *see also Payne v. Axelrod*, 871 F. Supp. 1551, 1557 (N.D.N.Y. 1995) (Kaplan, J.) (citing *Wolff*).  Courts, including the Second Circuit, further have acknowledged an entitlement to assistance in preparing a defense on the part of either a prisoner who has been transferred between facilities or one who is "disabled by confinement in SHU."  *See*, *e.g.*, *Fox*, 893 F.2d at 478*; Eng*, 858 F.2d at 897-98; *Pacheco v. Vanwyk*, No. 94-CV-456, 1997 WL 642540, at *8 (N.D.N.Y.

20

Oct. 15, 1997) (Pooler, J.) (citing *Eng*); *Dawes v. Carpenter*, 899 F. Supp. 892, 896 (N.D.N.Y. 1995) (Kaplan, J.) (citing *Wolff* and *Eng*); *Parris*, 1993 WL 328199, at *5. The law requires that "the assistance must be provided in good faith and in the best interest of the inmate." *Ayers v. Ryan*, 152 F.3d 77, 81 (2d Cir. 1988). That constitutional mandate, however, does not obligate prison officials to provide an assistant of the prisoner's choosing, as apparently now suggested by the petitioner. *Gates v. Selsky*, No. 02 CV 496, 2005 WL 2136914, at *6 (W.D.N.Y. Sept. 2, 2005) (citations omitted); *Greene*, 1995 WL 60020, at *14.

      b)    Contrary To, or Unreasonable Application Of, Clearly Established Supreme Court Precedent

I have carefully reviewed the transcript of the disciplinary hearing in question, and find no reason to conclude that petitioner was denied adequate assistance to allow him to prepare for and defend himself in the instant hearing. Accordingly, the finding of the Appellate Division in this regard is not contrary to or an unreasonable application of clearly established Supreme Court precedent.

      3.    Lack of Evidence

Petitioner contends that the evidence adduced at the hearing was insufficient to support the hearing officer's determination. Specifically,

21

petitioner argues that there was no evidence to demonstrate that his cellmate sustained injury as a result of assault, nor was there indication that the petitioner possessed a weapon, particularly since a search immediately following the incident failed to reveal the existence of any weapon.

        a)      <u>Clearly Established Supreme Court Precedent</u>

The due process requirements associated with the sufficiency of evidence necessary to support a hearing officer's disciplinary determination is modest.  Under *Wolff* and its companion case, *Superintendent v. Hill*, 472 U.S. 445, 105 S. Ct. 2768 (1985), the determination must be "'supported by some evidence in the record.'" *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000) (quoting *Hill*, 472 U.S. at 454, 105 S. Ct. at 2773*); see also Torres v. Burge*, No. 01-CV-1337, 2007 WL 625982, at *5 (N.D.N.Y. Feb. 23, 2007) (Sharpe, J.) (quoting *Friedl*).  Under this standard, which is unexacting, the federal courts are encouraged to "afford appropriate deference and flexibility to state officials to try to manage a volatile environment."  *Sandin v. Conner*, 515 U.S. 472, 482, 115 S. Ct. 2293, 2299 (1995) (citations omitted).  The constitutionally-mandated "some evidence" floor is significantly less

demanding than the "substantial evidence" test applied and determined to

have been met in this instance by the Third Department.  *See Sira v.*

*Morton*, 380 F.3d 57, 69, 76 n.9 (2d Cir. 2004) (indicating that the

"substantial evidence" threshold is "sterner" than the "some evidence"

standard, which is "extremely tolerant and is satisfied if 'there is *any*

evidence in the record that supports' the disciplinary ruling") (quoting

*Friedl*, 210 F.3d at 85) (emphasis in original).

> b)   Contrary To, or Unreasonable Application Of, Clearly
>      Established Supreme Court Precedent

In this instance the hearing record reveals more than adequate

evidence to support all of the charges upon which a finding of guilt was

rendered.  The eyewitness testimony of the corrections officer who

witnessed the incident supported both the finding of an assault by

petitioner on his cellmate as well as the possession of a weapon, the

counselor testifying that LeBron "was holding something in his hands and

it was obvious from his act that he had cut [his fellow inmate]."  Article 78

Second Amended Answer Exh. R at p. 30.  The misbehavior report issued

by the corrections counselor advised that the witness observed an

instrument or object in petitioner's right hand and petitioner making a

downward slashing motion causing injury to the right side of the cellmate's

face.  *Id.*, Exh. K.  The testimony of the corrections nurse called by the petitioner to testify on his behalf at the hearing, moreover, reflected that the cellmate has sustained injuries consistent with a slashing.  *Id.,* Exh. R at pp. 20, 46-50.

Having reviewed the record,  I find that the Third Department's determination that the finding of guilt was supported by substantial evidence, and thus could meet the lower threshold of "some evidence" under *Hill*, is not either contrary to or an unreasonable application of clearly established Supreme Court precedent.

4.    Hearing Officer Bias

The basis for petitioner's claim of hearing officer bias is somewhat equivocal.  In support of this portion of his petition, LeBron cites excerpts from the hearing transcript which, he suggests, indicate a predisposition on the part of the hearing officer as well as the fact that there are certain portions of the hearing tape which are not fully audible.

a)    Clearly Established Supreme Court Precedent

In the criminal context, to establish that a judge has engaged in misconduct sufficient to warrant redress, a party generally must demonstrate that he or she displayed "such a high degree of favoritism or

antagonism as to make fair judgment impossible." *Liteky v. United States,* 510 U.S. 540, 555, 114 S. Ct. 1147, 1157 (1994); *see also Withrow v. Larkin,* 421 U.S. 35, 47, 95 S. Ct. 1456, 1464 (1975) (indicating that to succeed on a judicial misconduct claim, a party must "overcome a presumption of honesty and integrity in those serving as adjudicators"); *Russell v. Ricks*, No. 02CV0940, 2006 WL 1555468, at *14 (N.D.N.Y. May 31, 2006) (Kahn, J.) (citing *Liteky* and *Withrow*).[9]  Indeed, an inmate subject to a disciplinary hearing is entitled to an impartial hearing officer. *See, e.g., Wolff*, 418 U.S. at 570-71, 94 S. Ct. at 2981-82; *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996); *Farid v. Goord*, 200 F. Supp. 2d 220, 243 (W.D.N.Y. 2002).   The Supreme Court has observed that although the due process requirements applicable to prison disciplinary hearings "are in many respects less demanding than those for criminal prosecution . . . they are not so lax as to let stand the decision of a biased hearing officer who dishonestly suppresses evidence of innocence." *Balisok,* 520 U.S. at 647, 117 S. Ct. at 1588; *see also Farid*, 200 F. Supp. 2d at 243.

      b)    <u>Contrary To, or Unreasonable Application Of, Clearly Established Supreme Court Precedent</u>

---

[9]       "In reviewing a judicial misconduct claim, courts are to presume that public officials have 'properly discharged their official duties.'"  *Russell*, 2006 WL 1555468, at *15 n.17 (quoting *Bracy v. Gramley*, 520 U.S. 899, 909, 117 S. Ct. 1793, 1799 (1997) (internal quotations and citations omitted)).

25

A review of the hearing transcript as well as the hearing officer's determination fails to reveal any basis to conclude predisposition or bias. Rather, the transcript demonstrates that petitioner was permitted to freely question witnesses and to articulate his defense to the charges. *See, e.g., Russell*, 2006 WL 1555468, at *15. While petitioner challenges the hearing officer's acquisition of his prior disciplinary record before ruling upon the question of guilt, this hearing officer stated he would not examine that history unless it became relevant, and in any event there is no indication that it influenced his finding of guilt in any way. Accordingly, I find that the Appellate Division's rejection of this claim was neither contrary to or an unreasonable application of clearly established Supreme Court precedent.

### 5.   Excessive Sentence

Petitioner's last argument addresses the severity of the modified sanction imposed, consisting of two years of SHU confinement and loss of privileges and good time credits for the same time period. Citing prison guidelines regarding sanctions for disciplinary actions, petitioner claims that this sanction was excessive.[10] This portion of LeBron's petition

---

[10]   Neither petitioner nor respondent identifies the specific DOCS sentencing guidelines applicable to the offenses committed by petitioner, and the

overlooks the established principle that "'the failure to follow a DOCS Directive or prison regulation does not give rise to a federal constitutional claim.'" *Claudio v. Herbert*, No. 01-CV-0120, 2005 WL 327106, at *11 (W.D.N.Y. Feb. 10, 2005) (quoting *Rivera v. Wohlrab*, 232 F. Supp. 2d 117, 123 (S.D.N.Y. 2002)).  Specifically, an inmate has no federal constitutional right to a sentence in accordance with the DOCS sentencing guidelines. *Id.*  Indeed, under New York law, the guidelines are simply that; they are not binding, even as a matter of state law, upon the hearing officer. *People v. Vasquez*, 89 N.Y.2d 521, 532 n.6, 655 N.Y.S.2d 870, 877 n.6 (1997), *cert. denied sub. nom.*, *Cordero v. Lalor*, 522 U.S. 846, 118 S. Ct. 131 (1997).  Accordingly, such guidelines do not rise to a level of constitutional significance, and the failure to sentence within them does not present a basis for habeas relief.

─────────────────

record before the court reflects that the guidelines on which petitioner relies may have been outdated.  *See* Article 78 Second Amended Answer Exh. E at p. 7.  In any event, I find instructive the regulations applicable to the Department of Correctional Services, which provide that upon a guilty determination in a Tier III hearing, a hearing officer may impose a penalty of "confinement . . . to a special housing unit continuously or on certain days during certain hours for a specified period" as well as "loss of a specified period of good behavior allowance ('good time')."  N.Y. Comp. Codes R. & Regs. tit. 7, §§ 254.7(a)(1)(iii), (vii) (2007).  The maximum penalty which may be imposed at a Tier III hearing is "keeplock or SHU confinement for a period of time, limited only by the length of the inmate's sentence, as well as loss of good time credit and privileges."  *Ruiz v. Selsky*, No. 96 Civ. 2003, 1997 WL 137448, at *1 (S.D.N.Y. Mar. 24, 1997) (citing N.Y. Comp. Codes R. & Regs. tit 7, § 254.7(a)(1)); *Claudio v. Herbert*, No. 01-CV-0120, 2005 WL 327106, at *11 (W.D.N.Y. Feb. 10, 2005).

Arguably, this ground could be construed as a claim that the

sentence imposed constitutes a violation of the Eighth Amendment to the

United States Constitution, which prohibits the imposition of a sentence

that is "grossly disproportionate to the severity of the crime." *Rummel v.*

*Estelle*, 445 U.S. 263, 271, 100 S. Ct. 1133, 1138 (1980). The purpose of

the Eighth Amendment is to ensure that the penal system comports with

"contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1,

8, 112 S. Ct. 995, 1000 (1992). The Eighth Amendment, however, "is not

intended to garner judicial review for routine [prison] disciplinary

sanctions." *LeBlanc v. Pettiford*, No. 6:06-1194, 2007 WL 465566, at *5

(D.S.C. Feb. 7, 2007). Prison administrators should be afforded "wide-

ranging deference in the adoption and execution of policies and practices

that in their judgment are needed to preserve internal order and discipline

and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547,

99 S. Ct. 1861, 1878 (1979); *see also Vasquez*, 89 N.Y.2d at 532, 655

N.Y.S.2d at 876 (noting that courts must defer to the decisions of prison

authorities regarding the discipline necessary to serve important

institutional interests). Indeed, other district courts have dismissed similar

Eighth Amendment claims by inmates alleging that revocation of good

time credit resulted in a harsh and excessive punishment.  *See, e.g.,*

*LeBlanc*, 2007 WL 465566, at *5; *Beste v. Anderson*, No. 05-2907, 2006

WL 1581360, at *3 (D. Minn. June 5, 2006) (finding that petitioner's

allegation that loss of good conduct time constitutes cruel and unusual

punishment "falls far short of the level of conduct prohibited by the Eighth

Amendment").

The modified sanction imposed on petitioner required the loss of two

years' worth of good time credits, a punishment which seems entirely

congruent with the severity of the offenses committed by the petitioner,

and certainly does not run afoul of fundamental notions of fairness.  *See,*

*e.g., Fortuna v. Coughlin*, 222 A.D.2d 588, 588, 636 N.Y.S.2d 640 (2d

Dep't 1995) (finding that penalties of 180 days in the SHU and one year's

loss of good time were not so disproportionate to the offense of making a

threat in violation of 7 N.Y.C.R.R. § 270.2(B)(3)(i), Rule 102.10 as to

shock one's sense of fairness).  On administrative review, the DOCS was

within its discretion to impose such a sanction, and thus this portion of

LeBron's petition fails to raise a federal constitutional issue that warrants

habeas relief.  Simply stated, applying a constitutional overview, the court

is not positioned to say that the Appellate Division's decision regarding the

severity of the sentence imposed was improper.

IV.   <u>SUMMARY AND RECOMMENDATION</u>

Each of the arguments now raised by LeBron has been presented to and rejected by the state courts.  Finding no reason to conclude that the state court determinations are either clearly erroneous or represent unreasonable applications of clearly established Supreme Court precedent, it is therefore hereby

RECOMMENDED, that petition in this matter be denied and dismissed in all respects.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties by regular mail.

Dated:     May 21, 2007
           Syracuse, NY

David E. Peebles
U.S. Magistrate Judge